UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH HAYDEN,

                       *Plaintiff*,

      -against-

THE CITY OF NEW YORK, ET AL.,

                    *Defendants*.

----------------------------------------------------------------X

                               17 CV 1894 (RJS)

---

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE*

---

J. Remy Green
Elena L. Cohen
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385
elena@femmelaw.com
929-888-9480

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ...................................................................................................... iv

FACTUAL AND PROCEDURAL HISTORY ............................................................................ 1

LEGAL STANDARD .................................................................................................................. 2

   I.     DEFENDANTS MUST PROVIDE PROPOSED SPECIAL INTERROGATORIES BEFORE
TRIAL STARTS ....................................................................................................................... 3

   II.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING OR OFFERING
TESTIMONY ABOUT PLAINTIFF'S UNRELATED LAWSUITS ....................................................... 3

   III.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING THE FACT OF
PLAINTIFF'S PRIOR TESTIMONY FROM THE 1980 DRUG CASE ................................................. 5

   IV.   THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING
PLAINTIFF'S PRIOR CONVICTIONS ........................................................................................... 6

      A.    PLAINTIFF'S CRIMINAL HISTORY IS INADMISSIBLE FOR ANY PURPOSE UNDER
FRE 404(b) .......................................................................................................................... 6

      B.    PLAINTIFF'S FELONY CONVICTIONS ARE INADMISSIBLE FOR IMPEACHMENT
UNDER FRE 609 .................................................................................................................. 8

      C.    THE COURT SHOULD PRECLUDE THE DEFENDANTS TO REFERENCING OR
ADMITTING INTO EVIDENCE PLAINTIFF'S RAP SHEET ....................................................... 12

   V.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING
PLAINTIFF'S PRIOR INCARCERATIONS, PAROLE, AND/OR PROBATION ............................. 12

   VI.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM DISPLAYING OR
REFERENCING MR. HAYDEN'S MUGSHOT ................................................................................ 13

   VII.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING
PLAINTIFF'S PRIOR DRUG USE .................................................................................................. 14

   VIII.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING OR
OFFERING DEPOSITION INQUIRIES ABOUT PLAINTIFF'S ALLEGED OPEN BENCH
WARRANT AT THE TIME OF HIS ARREST .................................................................................. 15

   IX.   DEFENDANTS SHOULD BE PRECLUDED FROM REFERENCING PLAINTIFF'S
OTHER NAMES OR ALIASES ...................................................................................................... 16

X.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE CONCERNING PLAINTIFF'S FINANCIAL STATUS ........................................................................ 17

XI.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S TESTIMONY WHERE HE SAID HE DID NOT KNOW WHO OFFICER ADAM KOTOWSKI IS OR WHICH OFFICER HE IS ...................................................................................... 18

XII.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S PRIOR BROKEN JAW FROM 1971 ........................................................................... 18

XIII.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM TESTIFYING OR OTHERWISE PRESENTING DOCUMENTARY EVIDENCE OF AWARDS/COMMENDATIONS THEY OR NON-PARTY WITNESSES RECEVIED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW ENFORCEMENT OFFICERS ..................................................................... 19

XIV.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR ANY DAMAGES AWARD ........................................................................................................................................... 20

XV.    THE COURT SHOULD PERMIT PLAINTIFF TO CROSS THE DEFENDANTS AND OTHER NYPD WITNESSES IN PLAINTIFF'S CASE-IN-CHIEF ..................................................... 21

XVI.    ALL PARTIES SHOULD BE PERMITTED TO CALL WITNESSES VIA VIDEO CONFERENCE SHOULD THE NEED ARISE. ............................................................................... 23

CONCLUSION .......................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bixby v. KBR, Inc.*,
No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ........................23

*Chonich v. Wayne Cty. Cmty. Coll.*,
874 F.2d 359 (6th Cir. 1989) ................................................................................................23

*Daniels v. Loizzo*,
986 F.Supp. 245 (S.D.N.Y. 1997)..................................................................................7, 9, 10

*Eng v. Scully*,
146 F.R.D. 74 (S.D.N.Y. 1993) ...............................................................................................4

*Espinosa v. McCabe*,
2014 U.S. Dist. LEXIS 31741 (N.D.N.Y. Mar. 12, 2014).....................................................11

*Fletcher v. City of New York*,
54 F.Supp.2d 328 (S.D.N.Y. 1999).........................................................................................10

*Furlong v. Circle Line Statue of Liberty Ferry*,
902 F. Supp. 65 (S.D.N.Y. 1995)............................................................................................14

*In re: Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MC-2543 (JMF), 2016 U.S. Dist. LEXIS (S.D.N.Y. Aug. 18, 2016) ........................15

*Graham v. Connor*,
490 U.S. 386 (1989)................................................................................................................16

*Gyasi v. City of N.Y.*,
No. 05 Civ. 9453 (S.D.N.Y.) ............................................................................................20, 21

*Hilburn v. N.J. Dep't of Corr.*,
Civ. No. 7-6064, 2012 WL 3133890 (D.N.J. July 31, 2012)....................................................5

*Hynes v. Coughlin*,
79 F.3d 285 (2d Cir. 1996)........................................................................................................7

*Innovation Ventures, LLC v. NVE, Inc.*,
90 F. Supp. 3d 703 (E.D. Mich. 2015).....................................................................................11

*Kemezy v. Peters*,
79 F.3d 33 (7th Cir. 1996) (Posner, J.) ....................................................................................21

iv

*Lewis v. Velez*,
　149 F.R.D. 474 (S.D.N.Y. 1993) ...................................................................8, 10

*Luce v. United States*,
　469 U.S. 38 (1984)...........................................................................................2

*Mathie v. Fries*,
　121 F.3d 808 (2d Cir. 1997)...........................................................................21

*Nelson v. Brown*,
　673 F. Supp. 2d 85 (E.D.N.Y. 2009) ...............................................................13

*Nibbs v. Goulart*,
　822 F. Supp. 2d 339, 2011 U.S. Dist. LEXIS 106998 (S.D.N.Y 2011) ..................15

*Outley v. City of N.Y.*,
　837 F.2d 587 (2d Cir. 1988)...............................................................................4

*Palmieri v. Defaria*,
　88 F.3d 136 (2d Cir. 1996)...............................................................................2

*Perry v. Connecticut*,
　441 U.S. 966 (1979) (Marshall, J., dissenting from denial of cert.) ......................13

*Picciano v. McLoughlin*,
　2010 WL 4366999 (N.D.N.Y Oct. 28, 2010) ....................................................10

*Ramsay-Nobles v. Keyser*,
　2020 U.S. Dist. LEXIS 12081 (S.D.N.Y. Jan. 22, 2020) ....................................12

*Satterfield v. Maldonado*,
　2016 U.S. Dist. LEXIS 30779 (S.D.N.Y. Mar. 10, 2016) ....................................11

*United States v. Brown*,
　606 F.Supp. 2d 306 (E.D.N.Y. Mar. 9, 2009).....................................................10

*United States v. DiPaolo*,
　804 F.2d 255 (2nd Cir. 1986)...........................................................................14

*United States v. Estrada*,
　430 F.3d 606 (2d Cir. 2005).................................................................10, 11, 12

*United States v. Firempong*,
　624 F. App'x 497 (9th Cir. 2015)......................................................................10

*United States v. Harrington*,
　490 F.2d 487 (2d Cir. 1973).......................................................................13, 14

*United States v. Hayes,*
   553 F.2d 824 (2d Cir.1977)...............................................................................10

*United States v. Hicks,*
   748 F.2d 854 (4th Cir. 1984) .............................................................................23

*United States v. Mahler,*
   579 F.2d 730 (2d Cir. 1998)................................................................................9

*United States v. Matera,*
   489 F.3d 115 (2d Cir. 2007)..............................................................................17

*United States v. Nazzaro,*
   889 F.2d 1158 (1st Cir. 1989)...........................................................................19

*United States v. Ong,*
   541 F.2d 331 (2d Cir. 1976)..............................................................................15

*United States v. Reyes,*
   18 F.3d 65 (2d Cir. 1994) .................................................................................17

*United States v. Scott,*
   677 F.3d 72 (2d Cir. 2012)................................................................................17

*United States v. Washington,*
   106 F.3d 983 (D.C. Cir. 1997) ..........................................................................20

*United States v. Watkins,*
   2009 U.S. Dist. LEXIS 29733, 2009 WL 927494 (C.D. Ill. Apr. 2, 2009) ...........11

*United States v. White,*
   692 F.3d 235 (2d Cir. 2012)..............................................................................17

*United States v. White,*
   No. 08-cr-682 (NGG), 2009 WL 4730234 (E.D.N.Y. Dec. 4, 2009) ...............12, 18

*Washpon v. Parr,*
   561 F. Supp. 2d 394, 2008 U.S. Dist. LEXIS 44602 (S.D.N.Y. June 2, 2008) .......3

*Wilson v. Mazzuca,*
   570 F.3d 490 (2d. Cir. 2009)..............................................................................13

*Young v. Calhoun,*
   No. 85 Civ. 7584, 1995 WL 169020 (S.D.N.Y., Apr. 10, 1995)............................4

*Zellner v. Summerlin,*
   494 F.3d 344 (2d Cir. 2007)................................................................................5

*Zinman v. Black & Decker, Inc.*,
   983 F.2d 431 (2d Cir.1993).................................................................................9

**Other Authorities**

Fed. R. Ev. 401 ...........................................................................................................2, 5

Fed. R. Ev. 402 ..............................................................................................................2

Fed. R. Ev. 403 ....................................................................................................... *passim*

Fed. R. Ev. 404 ....................................................................................................... *passim*

Fed. R. Ev. 609(a) ................................................................................................8, 10, 11

Fed. R. Ev. 609(b) ...........................................................................................8, 9, 11, 12

Fed. R. Ev. 611(c) ...................................................................................................22, 23

U.S. Const. amend. IV ................................................................................................3, 15

## FACTUAL AND PROCEDURAL HISTORY

On the evening of March 15, 2016, Plaintiff Joseph Hayden attended a public event at the offices of the Soros Foundation on West 57th Street in Manhattan. At approximately 8:30 p.m., Mr. Hayden left the event and exited the building onto the 57th Street sidewalk, where he noticed the police attempting to persuade a distressed man into an ambulance. Mr. Hayden took out his cell phone and began to record the police from a distance of 15-20 feet. Less than two minutes later, the man entered the ambulance, and Mr. Hayden continued recording on his cell phone from 15 feet away.

At about this time, Defendants Abdalla and Kotowski arrived on the scene. Defendant Abdalla approached Mr. Hayden, pressed his baton against Mr. Hayden's midsection, and instructed Mr. Hayden to move back. Mr. Hayden complied. At this point, the distressed man had entered the ambulance. Mr. Hayden then began filming Defendant Abdalla from about 15 feet away, while verbally criticizing Abdalla's conduct. In retaliation for Plaintiff's criticism and filming, Defendant Abdalla walked over to Plaintiff, demanded identification and instructed Plaintiff to move. Plaintiff backed away and Abdalla followed Plaintiff, positioning himself inches from Plaintiff. Mr. Hayden continued to film Defendant Abdalla while telling Abdalla "You are the problem." Abdalla pressed Plaintiff against a scaffolding bar and caused Plaintiff to lose his balance.

Defendants Abdalla and Kotowski then shoved Plaintiff to the ground and Defendant Abdalla struck Plaintiff at least two times in the back of his legs with his asp/baton. Mr. Hayden is a 79-year-old African-American man. He is five-feet five-inches tall, and weighed 160 pounds at the time of the incident. Defendant Abdalla is six feet tall and weighs 200 pounds.

Plaintiff filed this lawsuit alleging false arrest, denial of fair trial, excessive force, and pendent state law claims. At the conclusion of discovery, the Defendants filed a summary judgment motion, which the Court granted in part. The only remaining claim to be tried is Plaintiff's claim for excessive force pursuant to federal and state law.

## LEGAL STANDARD

Generally, the purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 (1984) (explaining that the motion *in limine* is used to "exclude anticipated prejudicial evidence before the evidence is actually offered"); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Under Fed. R. Evid. 402, evidence must be "relevant" to be admissible, meaning "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if evidence has some probative value, Fed. R. Evid. 403 grants a district court discretion to exclude even *relevant* evidence on the grounds of prejudice, confusion, or waste of time:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

Thus, to be admissible, evidence must be both (1) relevant and (2) not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 402 and 403. Further, rule 404(b) states, in relevant part, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion

the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

## I.     DEFENDANTS MUST PROVIDE PROPOSED SPECIAL INTERROGATORIES BEFORE TRIAL STARTS

Defendants may request special interrogatories, post-verdict, to support a purported qualified immunity defense. Plaintiff objects, as the evidence, if proven, would exclude any possibility that the Defendants were acting reasonably or in good faith, and they would not be entitled to qualified immunity. *See, e.g., Washpon v. Parr,* 561 F. Supp. 2d 394, 407-408, 2008 U.S. Dist. LEXIS 44602, *28 (S.D.N.Y. June 2, 2008) ("Since the law in this area is well-established, 'in Fourth   Amendment unreasonable force cases,   unlike   in   other   cases, the qualified immunity inquiry is the same as the inquiry made on the merits.'") (quoting *O'Bert ex   rel.   Estate   of   O'Bert   v.   Vargo,*   331   F.3d   29,   37   (2d   Cir.   2003)).

But if the Court might allow special interrogatories for any purpose, the Court should order Defendants to provide them well in advance of the beginning of trial. Special interrogatories elicit facts from the jury, and it is not fair to have Defendants build a defense by claiming facts are absent from the record, or have not been proven, without Plaintiff having an opportunity to know, upfront, what he needs to prove (or what Defendants claim did not happen). This cannot wait until the close of evidence, when it is too late for Plaintiff to supplement the record, *voire dire* on the special interrogatories, or propose jury instructions which address them.

## II.     THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING OR OFFERING TESTIMONY ABOUT PLAINTIFF'S UNRELATED LAWSUITS

Mr. Hayden testified at his deposition that he was a Plaintiff in two unrelated lawsuits. He was the lead Plaintiff in a voting rights act case from 2000-2008, and he was the Plaintiff in an automobile accident case. Evidence of both unrelated lawsuits should be precluded at trial.

"It is well-settled in this Circuit that evidence of a plaintiff's litigiousness 'may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant.'" *Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at *6 (S.D.N.Y., Apr. 10, 1995) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 592 (2d Cir. 1988)) (collecting authorities). The Court should apply this straightforward rule to exclude all evidence and testimony concerning other lawsuits filed by Plaintiff. Plaintiff's prior voting rights and automobile accident cases have nothing to do with any of the issues that will be before the jury at trial, and Defendants' only possible purpose in disclosing them to the jury would be to improperly prejudice the fact-finder against Plaintiff. *See Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) (use of irrelevant prior litigations "would potentially unfairly prejudice the jury against Plaintiff by painting him as a litigious character who lacks validity").

In the absence of any proof whatsoever that Plaintiff's lawsuits have been baseless or fraudulent, there is no basis for their use at trial. *See Young*, 1995 WL 169020, at *6 (prior lawsuits admissible only "if defendants can prove that plaintiff has made similar claims that were found to be fraudulent").

Injecting the merits of Plaintiff's prior lawsuits into the trial of this action would require an immense diversion of time and resources that is not justified by the vanishing probative value of the information. *See Outley*, 837 F.2d at 594 ("In order for a jury properly to consider [other lawsuits], the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury. Opening up this area thus invites detailed inquiries, denials,

and explanations, likely to lead to multifariousness and a confusion of issues."); *see also, e.g.,*
*Hilburn v. N.J. Dep't of Corr.*, Civ. No. 7-6064, 2012 WL 3133890, at *24 (D.N.J. July 31, 2012)
(sustaining exclusion of evidence regarding a prior settlement "to avoid confusion and to prevent
the proceedings from diverging into the facts and circumstances of another lawsuit which, at best,
would be a waste of time, and, at worst, could prejudicially suggest that Plaintiff was a serial
litigant").

Here, the jury would need to consider the evidence concerning the prior actions; would
need to be instructed on the different burdens of proof and standards of causation governing each
set of claims; and would likely need to answer special interrogatories concerning the relative role
of each factor in Plaintiff's ultimate damages (in the case of the automobile action) and the
injunctive relief awarded or settled upon (in the case of the voting rights action)—which
Defendants have not even proposed. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)
(discussing requirement that defendant request that the jury be specifically asked any factual
question necessary for its affirmative defense).

In short, any attempt by Defendants to use other litigations commenced by Plaintiff in their
defense would be unduly prejudicial, irrelevant, and a waste of time.

## III. THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING THE FACT OF PLAINTIFF'S PRIOR TESTIMONY FROM THE 1980 DRUG CASE

At his deposition, Plaintiff testified that in or around 1980 he testified as a non-party
witness for criminal defendants in a drug case. Defendants should be precluded from questioning
Plaintiff about this because it is not relevant. "Evidence is relevant if it has any tendency to make
a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401.  At trial, a
jury will decide whether the Defendants used excessive force. Plaintiff's status as a defense witness
40 years ago does not bear on this issue.

**IV.     THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S PRIOR CONVICTIONS**

The Court should prohibit the Defendants from eliciting evidence concerning Plaintiff's criminal history, because such evidence would be irrelevant, lack probative value, yet is highly prejudicial.

Plaintiff testified at his deposition that in 1957, when he was 16 years old, he was convicted of a drug charge for heroin. Plaintiff was incarcerated for three years related to this conviction and released from prison on this charge in 1960.

Plaintiff testified at his deposition that in 1963 he was convicted of heroin possession, incarcerated at Sing Sing for approximately 2 ½ years, and was released in or about 1965 or 1966.

Plaintiff testified at his deposition that in 1969 he was convicted of attempted murder of two police officers, incarcerated at Attica related to this conviction for approximately two years until his conviction was vacated in 1971.

Plaintiff testified at his deposition that in 1977 he was convicted of money laundering, incarcerated in Harrisburg, Pennsylvania for about nine years until he was released from custody in or about 1986 or 1987.

Plaintiff testified at his deposition that in or around 1986-1987 he was charged with assault and as a result incarcerated for a few months for a parole violation related to this incident.

On page 16 of his deposition transcript, Plaintiff also testified that he was previously arrested for manslaughter in 1987 and convicted of manslaughter in 1988. Upon information and belief, this sentence maxed out on August 24, 2007 and Plaintiff's sentence ended. Joseph Hayden has not been incarcerated since 2007.

**A.  PLAINTIFF'S CRIMINAL HISTORY IS INADMISSIBLE FOR ANY PURPOSE UNDER FRE 404(b)**

Federal Rule of Evidence 404(b) provides in relevant part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Applying Rule 404(b), the Second Circuit has held, for example, that in an excessive force case regarding a prisoner's treatment by corrections officers, the plaintiff's prison disciplinary records cannot be offered to show that the plaintiff has an "aggressive character" and "that it was therefore more likely than not that he was the aggressor on the occasions in question." *Hynes v. Coughlin*, 79 F.3d 285, 292 (2d Cir. 1996).

Here, given the allegations that Plaintiff was subjected to excessive force, evidence of his prior convictions similarly serve no purpose other than to encourage the jury to draw the impermissible inference that because Plaintiff has felony convictions from decades ago, it is more likely that he deserved the force to which he was subjected here.

In addition, Plaintiff's record may well suggest to the jury that Plaintiff is a "bad" person. Accordingly, Defendants would only seek to introduce these convictions to use them in a manner which is explicitly prohibited under 404(b). *See Daniels v. Loizzo*, 986 F.Supp. 245, 249 (S.D.N.Y. 1997) ("Instead, the proffer of such evidence amounts to nothing more than a veiled attempt to do what Rule 404(b) prohibits – introduction of bad acts evidence to show a propensity to commit such acts.").

Similarly, any stated attempt to admit this evidence under Rule 404(b) "for *other* purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" must be rejected. *Hynes*, 79 F.3d at 290. Evidence concerning Plaintiff's felony convictions is not relevant in this case, nor is it probative of any of these enumerated purposes – which it must be – for admission under 404(b). Further, none of those "other" purposes – namely motive, intent, knowledge, etc. – are even remotely at issue in this case, thus making any

attempt to introduce them under FRE 404(b) impermissible. *Lewis v. Velez*, 149 F.R.D. 474, 479 (S.D.N.Y. 1993) ("While it is true that 404(b) permits evidence of other acts to show [another purpose], [that purpose] must in fact be at issue in the case to justify admission of such evidence."

In the present matter, Plaintiff's criminal history has no bearing on his conduct or state of mind – or that of the Defendants – on the date in question. More to the point, evidence of these convictions will not illuminate the question of whether the Defendants subjected Plaintiff to excessive force. Notwithstanding, even if Plaintiff's criminal history is relevant (and it is not) it is unfairly prejudicial and should be excluded. The past convictions are not evidence related in any way to the factual questions at issue in this trial. Yet, there is a real and substantial likelihood that the jury would impermissibly discount Plaintiff's account of the subject incident because of his decades' old felony convictions – or use the knowledge of convictions to essentially decide that Plaintiff *deserved* to be subjected to excessive forcde. Accordingly, given that the only use of these convictions would be to irreparably prejudice the Plaintiff, they should be excluded.

## B. PLAINTIFF'S FELONY CONVICTIONS ARE INADMISSIBLE FOR IMPEACHMENT UNDER FRE 609

Evidence of Joseph Hayden's felony convictions cannot be used to impeach him under Rule 609(b) because their (virtually non-existent) probative value are substantially outweighed by the danger of unfair prejudice. Pursuant to Rule 609, courts are required to consider the probative value of a felony conviction in light of its prejudicial effect.

Rule 609(b) erects a time limitation to the admissibility of convictions for impeachment purposes. Criminal convictions more than ten years old are not admissible for impeachment unless the court determines that, in the interest of justice, the probative value of the conviction *substantially* outweighs its prejudicial effect. Fed. R. Ev. 609(b). Trial courts in the Second Circuit must make an "on-the-record determination supported by specific facts and circumstances that the

probative value of the evidence substantially outweighs its prejudicial effect" before admitting a conviction under Rule 609(b). *Daniels v. Loizzo*, 986 F. Supp. 245, 249 (S.D.N.Y. 1997). The Defendants have not set forth any evidence to indicate the CPL subsection of Mr. Hayden's money laundering conviction, nor any of the underlying facts and circumstances of his alleged involvement. The Defendants had the opportunity to elicit this evidence from Mr. Hayden at his deposition but failed to do so.[1] In short, as to any of Mr. Hayden's criminal history, Defendants' have not proffered any evidence that includes the underlying facts of any of Mr. Hayden's decades' old convictions. They have not provided any indication the "specific facts and circumstances" of the convictions, such that their "probative value … substantially outweighs [their] prejudicial effect." Fed. R. Ev. 609(b)(1). As such, they have not even shown the probative value exists, let alone that it "substantial outweighs" the significant prejudicial effect.

The Second Circuit has long recognized that Congress intended that convictions more than ten years old be admitted "very rarely and only in exceptional circumstances." *Zinman v. Black & Decker, Inc.*, 983 F.2d 431, 434 (2d Cir.1993).   This is because, as Congress recognized, convictions more than ten years old have very little or no probative value. *United States v. Mahler,* 579 F.2d 730, 736 (2d Cir. 1998). In exercising its discretion to determine whether there exist the requisite "exceptional circumstances," *Mahler,* 579 F.2d at 735, a court must consider a number

---

[1] Defendants have designated portions of Mr. Hayden's deposition that reference the convictions, without any context or other information about the convictions. *See* Joint Pretrial Order (ECF No. 89) at 9, *designating* Hayden Dep., lines 9:17-22 (Q:  "Was that in connection with … the 1977 conviction of … money laundering" / A:  "Yes."); 16:1-4 (Q:  "I saw on your [rap] sheet there was an arrest for second-degree murder in 1987.  Is that the incident that resulted in the conviction for manslaughter?" / A:  "Yes."); 18:22-19:2 (reciting crimes and time spent incarcerated, without any specific facts or circumstances).  Defendants have not designated any exhibits with further information – or any witnesses that would have knowledge relating to Plaintiff's convictions. Thus, it appears the mere fact of the convictions – without any "specific facts or circumstances" – is all Defendants seek to admit.

of factors. These include the nature, age, and severity of the crime and its relevance to the witness's credibility, the importance of credibility as an issue in the case, the availability of other means to impeach the witness, and whether the witness has "mended his ways" or engaged in similar conduct recently. *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997).

Joseph Hayden's drug convictions have no bearing on his character for truthfulness as a matter of law. *See Lewis*, 149 F.R.D. at 482 ("'[V]iolation of narcotics laws [are] 'not normally suggest[ive of] the special probative value on the issue of credibility contemplated by Fed. R. Ev. 609(a)(1)'" (citation omitted)); *Fletcher v. City of New York*, 54 F.Supp.2d 328, 332 (S.D.N.Y. 1999) ("'[c]onvictions for narcotic offenses are usually not considered to involve dishonesty or false statement'" (citing 4 Weinstein's Federal Evidence, § 609.03[2][b][iii], (2nd ed. 1998)); *Daniels*, 986 F.Supp. at 249 ("[d]rug crimes, however, do not automatically implicate the use of dishonesty of false statements"); *See also Picciano v. McLoughlin*, 2010 WL 4366999, *3 (N.D.N.Y Oct. 28, 2010) (same); *United States v. Brown*, 606 F.Supp. 2d 306, 319 (E.D.N.Y. Mar. 9, 2009) (same). Thus, these convictions, on their face, should not be mentioned.

Plaintiff's money laundering conviction similarly has no bearing on his character for truthfulness. Courts in this circuit have ruled that crimes of force or theft are not crimes involving dishonesty or false statements. *United States v. Estrada*, 430 F.3d 606, 614 (2d Cir. 2005) ("The district court did not err, having looked beyond the elements of the offense to the underlying facts, in determining that the circumstances of Padilla's larceny convictions did not involve falsity or deceit such as to fall within the ambit of Rule 609(a)(2)."); *See also United States v. Hayes*, 553 F.2d 824, 827 (2d Cir.1977) (noting that "crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary or petit larceny, do not come within Rule 609(a)(2)") (internal citations omitted). Other circuit courts have ruled that money laundering is not a crime involving dishonesty. *United States v. Firempong*, 624 F. App'x 497, 500 (9th Cir. 2015) (ruling that a prior conviction for

money laundering is not automatically admissible under Rule 609(a)(2)); *Innovation Ventures, LLC v. NVE, Inc.*, 90 F. Supp. 3d 703, 730 (E.D. Mich. 2015) (government conceding that conspiracy to commit money laundering is not a crime involving dishonesty); *see also United States v. Watkins*, 2009 U.S. Dist. LEXIS 29733, 2009 WL 927494 (C.D. Ill. Apr. 2, 2009).

Here, the Defendants have not set forth any facts from the money laundering conviction which would indicate that Mr. Hayden's alleged criminal activity involved dishonesty. Accordingly, the only real reason Defendants would seek to admit the mere fact of the money laundering conviction (or any of Plaintiff's felony convictions) would be to impermissibly encourage the jury to use it as propensity evidence and to poison the jury's view of Plaintiff person, such that the actual facts and evidence in this case would no longer matter. Such use of Plaintiff's history is expressly prohibited by the Federal Rules Evidence and should be barred here.

Finally, mention of Plaintiff's 1988 manslaughter conviction should be barred as well, because "defendants have presented no 'specific facts and circumstances' to show that the conviction's probative value substantially outweighs its prejudicial effect." *Satterfield v. Maldonado*, 2016 U.S. Dist. LEXIS 30779, at *6 (S.D.N.Y. Mar. 10, 2016) (precluding evidence of a manslaughter conviction under Fed. R. Ev. 609(b)). Even under the more generous 609(a) standard, the Second Circuit has cautioned that convictions "of violent or assaultive crimes generally do not" "relate to credibility." *United States v. Estrada*, 430 F.3d 606, 617-18 (2d Cir. 2005). *See also, Espinosa v. McCabe*, 2014 U.S. Dist. LEXIS 31741, at *12-13 (N.D.N.Y. Mar. 12, 2014) ("Convictions for murder, assault, and weapons possession are generally not particularly probative as to honesty or veracity"), *citing Estrada*. And here, the 609(b) requirement that the probative value must "substantially" outweigh prejudice applies. Since there is no credibility – or

otherwise – value to admitting a 33-year-old manslaughter [2] conviction, "the prejudice substantially outweighs any minimal probative value, which derives solely from the fact that the crime is serious and not from the nature of the crime (which is at the 'low probative value' end of the credibility spectrum announced in *Estrada*)." *Ramsay-Nobles v. Keyser*, 2020 U.S. Dist. LEXIS 12081, at *15 (S.D.N.Y. Jan. 22, 2020).

Additionally, at the very least, the Court should not permit Defendants to admit evidence of multiple convictions. Where admission of even just two convictions is sought, "the aggregate prejudicial effect of [both] convictions must [next] be weighed against their probative value," because, "[o]nce a prior felony has been presented to the jury, the incremental value of additional convictions may be diminished." *United States v. White*, No. 08-cr-682 (NGG), 2009 WL 4730234, at *5 (E.D.N.Y. Dec. 4, 2009) (citing *United States v. Washington*, 746 F.2d 104, 107 (2d Cir. 1984) (Newman, J., concurring)).

## C. THE COURT SHOULD PRECLUDE THE DEFENDANTS TO REFERENCING OR ADMITTING INTO EVIDENCE PLAINTIFF'S RAP SHEET

For the same reasons the Court should preclude the Defendants from referencing Plaintiff's prior convictions, so too should the Court prohibit the Defendants from referencing Plaintiff's RAP sheet. In addition to the reasons set forth above, the Court should also preclude the Defendants from referencing or admitting into evidence Plaintiff's RAP sheet because the document itself it hearsay and it contains hearsay.

## V.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S PRIOR INCARCERATIONS, PAROLE, AND/OR PROBATION

---

[2] As noted above, Plaintiff has not been incarcerated in any form since 2007 – meaning all convictions discussed in this section fall under Fed. R. Ev. 609(b), rather than 609(a).

The only remaining claim in this case is excessive force. In false arrest, malicious prosecution, denial of fair trial and other similar cases involving lost liberty/lost time claims, some courts allow inquiry into civil rights Plaintiffs' prior incarcerations because Defendants argue that the prior incarcerations diminish a Plaintiff's damages for lost liberty claims. While Plaintiff would dispute the relevance of prior incarcerations even in a lost liberty case, here Plaintiff has no remaining lost liberty claims. As such, there is no relevant purpose for allowing admission of any evidence related to Plaintiff's prior and completely unrelated incarcerations.  Additionally, even assuming relevance, if the jury were to hear of Plaintiff's prior incarcerations, they may make the impermissible inference that Plaintiff is a bad or untrustworthy person who deserved to be subjected to excessive force or who is lying about his version of events, leading to undue prejudice, confusion, delay, and waste of time.

## VI.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM DISPLAYING OR REFERENCING MR. HAYDEN'S MUGSHOT

Any mug shot of Plaintiff can likewise be intended only to impress on the jurors' minds an improper association between Mr. Hayden and criminality. As Justice Thurgood Marshall has observed, "displaying to the jury a mug shot . . . creates the same potential for prejudice as forcing [an individual] to stand trial in prison attire." *Perry v. Connecticut*, 441 U.S. 966, 966 (1979) (Marshall, J., dissenting from denial of cert.). In the criminal context, the Second Circuit has found admission of a mug shot of a defendant so prejudicial as to violate the constitutional right to a fair trial. *United States v. Harrington*, 490 F.2d 487, 491 (2d Cir. 1973); *see also Nelson v. Brown*, 673 F. Supp. 2d 85, 94 (E.D.N.Y. 2009) (introduction of a mug shot tainted the jury process); *Wilson v. Mazzuca*, 570 F.3d 490, 507 (2d. Cir. 2009) (introduction of mug shot prejudiced defendant by implying "propensity for criminality and violence").

13

Because there is no dispute over Mr. Hayden's identity and any mugshot will not depict his injuries, the photographs are not relevant.  Even if Defendants could show a "demonstrable need to introduce the photographs," they would have to be admitted in a manner "that does not draw particular attention to the source or implications of the photograph[]." *Harrington*, 490 F.2d at 494. At the very least, the New York City Police department insignia and text of the pedigree form surrounding the photographs would have to be removed to avoid unnecessary and intolerable prejudice.

## VII.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING PLAINTIFF'S PRIOR DRUG USE

Plaintiff testified at his deposition that in 1957, when he was 16 years old, he was convicted of a drug charge for heroin. Plaintiff was incarcerated for three years related to this conviction and released from prison on this charge in 1960. Plaintiff also testified at his deposition that in 1963 he was convicted of heroin possession, incarcerated at Sing Sing for approximately 2 ½ years, and was released in or about 1965 or 1966.

Defendants should be precluded from offering any deposition testimony mentioning any past drug possession or alleged drug use by Plaintiff. There is no evidence that Mr. Hayden possessed or was under the influence of any drugs at the time of his arrest, detention, or any other time relevant to his claims herein.

A witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness. *See United States v. DiPaolo*, 804 F.2d 255 (2nd Cir. 1986) ("'a general habit of intemperance tells us nothing of the witness's testimonial incapacity [unless it involves] actual intoxication at the time of the event observed or at the time of testifying…[and] it will usually not be admissible"); *Furlong v. Circle Line Statue of Liberty Ferry*, 902 F. Supp. 65, 68 (S.D.N.Y. 1995) (witness's alleged cocaine use two and one-half years before the event giving rise to the

lawsuit was not proper impeachment material since it could not have affected the witness's ability to observe and perceive the events and the drug use was not probative of untruthfulness); *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346, 2011 U.S. Dist. LEXIS 106998, *15-16 (S.D.N.Y 2011) ("To permit Defendants to introduce evidence of Nibbs's long-term marijuana use or to question Nibbs about the effects of marijuana use on his memory or ability to recollect in general would be grossly prejudicial and of indeterminate relevance without scientific evidence or expert testimony. Therefore, Defendants may not raise the issue of the effects of long-term marijuana use on Nibbs's memory"); *see also In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 U.S. Dist. LEXIS, at *1132 (S.D.N.Y. Aug. 18, 2016) (finding evidence of drug use to be highly prejudicial); *see also United States v. Ong*, 541 F.2d 331, 339–40 (2d Cir. 1976)). Thus, the Court should not permit the Defendants to inquire into or offer deposition testimony on these issues.

**VIII.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING OR OFFERING DEPOSITION INQUIRIES ABOUT PLAINTIFF'S ALLEGED OPEN BENCH WARRANT AT THE TIME OF HIS ARREST**

Defendants seek to introduce testimony related to an alleged open bench warrant for Plaintiff at the time the Defendants subjected him to excessive force. Plaintiff testified at his deposition that he was not aware of this alleged open warrant at the time Defendants assaulted him. The Defendants do not allege that they were aware of this warrant at the time they encountered Plaintiff.

The Court should preclude the Defendants from referencing this open warrant at the time of trial because it is completely irrelevant to any issue in this case and would also cause undue prejudice, waste of time, and confusion of the issues. The only issue at trial is whether the force Defendants used on Plaintiff was "reasonable" within the meaning of Fourth Amendment. "Reasonableness of a particular use of force must be judged from the perspective of a reasonable

15

officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 20-22 (1989)). An officer's actual "intent or motivation" is irrelevant; what matters is whether the Defendant's acts were "'objectively reasonable' in light of the facts and circumstances confronting" the Defendant. *Id*. at 397. Thus, the Defendants may not rely on the warrant to argue that the force was reasonable because they did not know about the warrant at the time they encountered and arrested Mr. Hayden and, even if they did, the warrant's mere existence is not instructive as to whether they used reasonable force.

The only purpose for introducing evidence of the warrant or offering deposition testimony referring to its existence would be to encourage the jury to draw the impermissible inference that Mr. Hayden is a criminal or somehow deserved the force alleged because of the warrant.

Further, as noted above, this is not a false arrest case. Typically, the Defendants will attempt to admit evidence of a civil rights Plaintiff's open warrant in false arrest cases or other cases involving lost liberty claims because, according to the Defendants, the warrant can cut off a Plaintiff's damages.  While counsel disagree with that argument in any case, such an argument certainly cannot be made here. The only remaining claim in this case is Plaintiff's cause of action for excessive force. The alleged open, unrelated warrant has no bearing on the central issue in this case which is whether the Defendants used force on Plaintiff which was excessive under the circumstances.

## IX.   DEFENDANTS SHOULD BE PRECLUDED FROM REFERENCING PLAINTIFF'S OTHER NAMES OR ALIASES

Plaintiff testified at his deposition that he previously went by the name Joseph Freeman. The Court should preclude the Defendants from referencing this name at trial because there is no claim in this case that Mr. Hayden attempted to conceal his name or identity. Therefore, this information is irrelevant. Reference to the name "Joseph Freeman" will also confuse the jury, delay

the proceedings, and may cause the jury to draw the impermissible inference that Plaintiff is a

dishonest or untrustworthy person because he was, at some point in a time, known by a slightly

different name than that displayed in the caption of this case.

## X.      THE COURT SHOULD PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE CONCERNING PLAINTIFF'S FINANCIAL STATUS

The Court should preclude the Defendants from seeking to introduce evidence concerning

Plaintiff's financial status, job history, receipt of public assistance, and any financial arrangements

within or concerning his household. These areas of testimony would serve only to smear,

embarrass, or otherwise impugn Plaintiff, without offering any value to the jury. Accordingly, such

evidence should not be permitted at trial.

To be admissible, under FRE 401 and 403, evidence must be both (1) relevant and (2) not

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012); *see also United States v. Matera*, 489

F.3d 115, 121 (2d Cir. 2007) ("The district court is commanded by Rule 403 to weigh the probative

value against the unfair prejudice."). The evidence at issue here fails both tests.

Plaintiff's work and financial history have no bearing on the central factual dispute in this

case, i.e., whether Defendants used excessive force against Plaintiff. Issues relating to Plaintiff's

job history are not relevant to his veracity nor does it tend to make any of the parties' claims or

defenses more or less likely to be true. *See United States v. Reyes*, 18 F.3d 65, 72 (2d Cir. 1994)

(finding reversible error where prejudicial effect of admitted evidence "was considerable and far

exceeded the minimal or non-existent probative value of the evidence"); *United States v. Scott*,

677 F.3d 72, 78 & n.5 (2d Cir. 2012) ("While crimes, wrongs, or bad acts may be more likely than

other kinds of acts to demonstrate criminal propensity and thus be inadmissible for that reason

under Rule 404(b), the Rule itself is in no sense limited to such acts" and covers "any conduct of the defendant which may bear adversely on the jury's judgment of his character").

Put simply, these areas of inquiry are of no probative value and are immaterial. At the same time, these areas of inquiry would embarrass Plaintiff and improperly suggest to the jury that Plaintiff's financial resources and employment history are somehow material to their consideration and evaluation of the evidence or the ultimate verdict in the case.

## XI.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S TESTIMONY WHERE HE SAID HE DID NOT KNOW WHO OFFICER ADAM KOTOWSKI IS OR WHICH OFFICER HE IS

At his deposition, defense counsel asked Plaintiff if he knew defendant Adam Kotowski. Defendants should be precluded from referencing this testimony at trial to attempt to impeach Plaintiff or attack his credibility. As is often the case in civil rights actions, here Plaintiff's counsel was able to determine the names of the officers involved in the incident and then included them as Defendants in the Complaint because, in counsel's professional opinion, the actions of the officers caused them to be legally liable to Plaintiff for civil rights violations. There is no legal requirement that a Plaintiff know the name of the officer who subjected him to excessive force in order to have counsel name that officer as a Defendant. Thus, Plaintiff's testimony on this issue is irrelevant and may cause the jury to draw the impermissible conclusion that Plaintiff should know or is legally required to know the name of the officers who violated his rights.

## XII.   THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERENCING PLAINTIFF'S PRIOR BROKEN JAW FROM 1971

At his deposition, defense counsel asked Plaintiff whether he had ever broken a bone before this incident. Plaintiff replied that he suffered a broken jaw in 1971. Evidence of this injury should be excluded because it is irrelevant and unduly prejudicial, confusing, and a waste of time. FRE 401 and 403; *White* at 246 (2d Cir. 2012).

The Court should preclude the Defendants from referencing this injury because it was nearly 40 years ago and has no bearing on the injuries Mr. Hayden now claims in this case. The jury may speculate and draw its own impermissible conclusions about how Mr. Hayden might have sustained the broken jaw, thus causing the jury to issue a verdict in favor of the Defendants based on evidence not at all relevant to the claims in this trial.

### XIII. THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM TESTIFYING OR OTHERWISE PRESENTING DOCUMENTARY EVIDENCE OF AWARDS/COMMENDATIONS THEY OR NON-PARTY WITNESSES RECEIVED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW ENFORCEMENT OFFICERS

In police misconduct trials, law enforcement officers, whether testifying as defendants or non-party witnesses, frequently attempt to discuss awards and/or commendations that they have received throughout their career relating to acts of purported bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence in violation of Fed. R. Evid. 404(b), is inadmissible hearsay and otherwise unduly prejudicial, Plaintiff seeks an Order precluding the Defendants, and any law enforcement witnesses, from presenting such evidence.

Whether the individual Defendants or non-party law enforcement officers received commendations in the past has no relevance on whether Defendants violated Plaintiff's civil rights in this case. In fact, the sole purpose of presenting such testimony in police misconduct litigation is to convince the jury that the law enforcement officers are heroes who put their life on the line to protect the citizenry, and, as a result, are more trustworthy. This purpose, however, constitutes inadmissible hearsay. See Fed. R. Evid. 404(b). It is also inadmissible hearsay, whose non-existent probative value is necessarily substantially outweighed by its danger of unfair prejudice. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, it was appropriate to exclude

evidence of commendations as impermissible opinion evidence and inadmissible hearsay); *See also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations not admissible under Fed. R. Ev. 404(a)(1), 405(a), or 405(b)).

Put most simply, these factors do not make any witness more or less credible or truthful, and thus evidence of such unrelated service would be improper bolstering, as it would wrongly enhance the officers' credibility. Accordingly, any reference to the military history, community service, and civic service of any of the NYPD witnesses, including any of the defendants, should be excluded.

## XIV. THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR ANY DAMAGES AWARD

Defendants should be precluded under Fed. R. Evid. 403 from suggesting or implying in any way that individual Defendants will have to pay any judgment in this case. Defendants should not be permitted to introduce evidence of their financial circumstances because the City will indemnify them for any punitive damages awarded. It is the City's uniform and unwavering practice to indemnify damages awards for law enforcement personnel represented by the City Law Department. For example, in the context of the New York City Police Department, in sworn interrogatory responses in *Gyasi v. City of N.Y.*, No. 05 Civ. 9453 (S.D.N.Y.), the City swore that "there are no cases" in which the City Law Department "has represented a NYPD police officer and punitive damages have been assessed against the officer, and the City of New York has failed to indemnify the officer for punitive damages." Green Decl., Ex. 1 (*Gyasi* Interrogatory Response) at Interrogatory No. 5; see also id. at Interrogatory No. 7 ("there are no cases" where the City has failed to indemnify a police officer represented by the City Law Department for compensatory

damages). In every case where compensatory or punitive damages have been awarded against a City police officer, the City, not the officer, paid. *See id.*

In light of the City's history of indemnifying law enforcement personnel when any damages, including punitive damages, are assessed, and the likelihood that that history will continue in this case, any evidence of the officers' financial circumstances is irrelevant, affirmatively misleading, and inadmissible. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders."). As Judge Scheindlin held in *Gyasi*:

> I am not going to mislead [the jury], thinking that [a punitive damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.

Green Decl., Ex. 2 (*Gyasi* Trans., June 29, 2006) at 6 (emphasis added).

Evidence of Defendants' financial circumstances has no relevance because Defendants will not pay a dime of any damages award, compensatory or punitive. But even if the evidence were somehow minimally relevant, its "relevance" would be substantially outweighed by the danger of prejudice and affirmatively misleading to the jury under Fed. R. Evid. 403. The individual Defendants "should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) (Posner, J.). Accordingly, the jury should not be influenced by misplaced sympathy or the mistaken belief that individual Defendants will pay any damages out of their own pockets.

**XV.   THE COURT SHOULD PERMIT PLAINTIFF TO CROSS THE DEFENDANTS AND OTHER NYPD WITNESSES IN PLAINTIFF'S CASE-IN-CHIEF**

Plaintiff intends to call at least some Defendants and law enforcement witnesses in his direct case. Plaintiff moves to be allowed to examine them with leading questions.

Rule 611 of the Federal Rules of Evidence provides, in relevant part, as follows:

(c) Leading Questions. Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

> (1) on cross-examination; and
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

Fed. R. Evid. 611(c). By its terms, Fed. R. Evid. 611(c)(2) permits a party to examine "a hostile witness…or a witness identified with an adverse party" through the use of leading questions.

Plaintiff should be permitted to examine Defendants and other law enforcements witnesses called in Plaintiff's direct case through the use of leading questions because they are all employees of the New York City Police Department. Therefore, they are "a hostile witness…or a witness identified with an adverse party."

As Judge Weinstein has noted, there are three reasons that historically weigh in favor of requiring non-leading questions on direct examination:

> First, that the witness is presumed to have a bias in favor of the party calling him; secondly, that the party calling a witness, knowing what that witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case; and thirdly, that a witness, intending to be entirely fair and honest might assent to a leading question which did not express his real meaning.

Weinstein's Federal Evidence § 611.06, at 4-611 (citation and footnote omitted). None of these rationales apply here.

Plaintiff believes that non-party law enforcement witnesses will side with their fellow officers. Again, as Judge Weinstein has recognized, "[t]he prohibition against leading is inapplicable to hostile or biased witnesses, or to witnesses who sympathize with the opponent's

cause or are unwilling for any other reason to reveal what they know." *Id. See also Bixby v. KBR, Inc.*, No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4, 2012) ("I interpret the phrase 'a witness identified with an adverse party' as referring to a witness whose relationship to an opposing party is such that the witness' interests vis-à-vis the litigation proceedings in which the witness' testimony is offered can reasonably be expected, under all the applicable circumstances, to be either identical to those of the adverse party or, at minimum, both closely aligned with those of the adverse party and of comparable significance.") (relying on *Chonich v. Wayne Cty. Cmty. Coll.*, 874 F.2d 359 (6th Cir. 1989), and *United States v. Hicks*, 748 F.2d 854 (4th Cir. 1984)). Plaintiff should be able to examine the Defendants and any law enforcement witnesses through the use of leading questions.

## XVI.   ALL PARTIES SHOULD BE PERMITTED TO CALL WITNESSES VIA VIDEO CONFERENCE SHOULD THE NEED ARISE.

During the COVID-19 pandemic, courts have faced extraordinary challenges and met them. However, some challenges are unpredictable:  a witness (or a family member) might test positive for COVID-19 or a witness may live in an area that experiences a sudden surge in positive tests, for example. There are also some more predictable challenges:  a witness may simply be unable to afford the recommended quarantine time in a hotel, if they are coming from out of state. In any event, should some challenge arise, Plaintiff submits that – assuming they are not the core witnesses, or too many witnesses – it would be better to allow some witnesses to testify remotely than to delay the entire trial.   Thus, Plaintiff asks that the Court direct that video conferencing services be made available to the parties during the trial, and that – if there are unexpected challenges in getting a particular witness to testify – the parties be permitted to call such a witness by video conference.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion

*in limine* in its entirety, and for such other relief as the Court deems just and proper.


Dated: Ridgewood, New York
       November 2, 2020

/S/
                         _____

J. Remy Green
Elena L. Cohen
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385
elena@femmelaw.com
929-888-9480