17-CV-1894 (RJS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH HAYDEN,

                                                         Plaintiff,

-against-

CITY OF NEW YORK, et al.,

                                                         Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Elissa Fudim, Esq.*
*Tel: (212) 356-2335*

**Point I –** <u>**Defendants Should Not Be Required To File Special Interrogatories Now.**</u>

Plaintiff asks this Court to "order Defendants to provide [plaintiff] with [special interrogatories] well in advance of the beginning of trial." Pl. MIL, Point I, at 3. Defendants will submit proposed special interrogatories, to address their affirmative defense of qualified immunity, if and when the Court requests them. The Court very well may determine that it is not in need of special interrogatories. The idea that plaintiff needs special interrogatories in order to know "what he needs to prove" is nonsense. Plaintiff has asserted a claim for excessive force. The Constitution, and a vast body of case law, has established the elements of the claim and "what plaintiff needs to prove". As to the facts, and defendants' version of events, discovery provided plaintiff with access to that information. Defendants are under no obligation to now essentially provide plaintiff with a script of defendants' strategy for trial and the evidence we intend to elicit beyond that required by the JPTO. Further, defendants reserve the right to change, add to or eliminate any of the proposed special interrogatories depending on the evidence adduced at trial and the Court's guidance as to what factual issues it believes it needs to decide qualified immunity.

Plaintiff's suggestion that defendants should not be permitted to submit special interrogatories at all is simply wrong. "The Second Circuit has set forth the procedure by which district courts should resolve disputes on factual issues at trial that are relevant to the qualified immunity analysis. In particular, '[i]f there are unresolved factual issues which prevent an early disposition of the defense [of qualified immunity], the jury should decide these issues on special interrogatories.'" <u>Jones v. Treubig</u>, 963 F.3d 214, 224-25 (2d Cir. 2020) (alterations in original) (quoting <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d Cir. 1990); see also <u>Stephenson v. Doe</u>, 332 F.3d 68, 81 (2d Cir. 2003) ("We believe that use of special interrogatories in this case resolves the

1

difficulty of requiring the jury to decide what the facts were that the officer faced or perceived and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts." (quotation marks omitted)). It is worth noting that both Jones and Stephenson involved force claims.

Finally, defendants can assure plaintiff that the proposed special interrogatories will not be based on "facts absent from the record" or facts that "have not been proven," but rather, the proposed special interrogatories will be based on the evidence admitted at trial and all reasonable inferences that can be drawn therefrom.

**Point II – Defendants Do Not Intend to Reference or Offer Testimony Concerning Plaintiff's Other Lawsuits Unless Plaintiff Opens the Door.**

Plaintiff seeks to preclude defendants from referencing during the trial plaintiff's two other unrelated lawsuits. Pl. MIL, Point II, at 3-4. This application is particularly perplexing because, according to plaintiff's designated trial testimony, it is plaintiff, not defendants, who seek to introduce testimony regarding plaintiff's other lawsuits. Specifically, plaintiff's has designated his deposition testimony concerning his role as lead plaintiff in a voting rights class action (Hayden Dep. 11:15-12:20).[1]

Defendants had no intention of referencing or offering testimony regarding plaintiff's other lawsuits in our direct case, but since plaintiff has chosen to adduce testimony on one of these lawsuits, defendants are entitled to similarly reference or adduce testimony about these lawsuits, and to offer testimony regarding either lawsuit should plaintiff open the door. "[W]hat is good for the goose is good for the gander." Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., No. 04-CV-7497 (KMK), 2007 U.S. Dist. LEXIS 13560, at *19 (S.D.N.Y. Feb. 26,

---

[1] Defendants objected to such testimony.

2007). Accordingly, plaintiff's motion to preclude should be denied insofar as plaintiff intends to adduce testimony concerning other civil lawsuits.

**Point III –** **Defendants Do Not Intend to Discuss Plaintiff's Role as a Witness in the 1980 Drug Case Unless Plaintiff Opens the Door.**

Plaintiff seeks to preclude defendants from asking plaintiff any questions about his role in a 1983 drug case. Pl. MIL, Point III, at 5. Since plaintiff is not testifying in person, defendants won't be questioning him about anything, and defendants have not designated any deposition testimony relating to that case. Accordingly, plaintiff's motion should be denied as moot; however, should plaintiff somehow open the door to such testimony, defendants reserve their right to read in such testimony.

**Points IV & V –** **Two of Plaintiff's Criminal Convictions Are Admissible, Along With His Attendant Incarcerations.**

Plaintiff seeks to preclude defendants from introducing evidence at trial of six of his prior convictions, enumerated in plaintiff's motion at page six (point IV), as well as his incarcerations associated therewith (point V). To be clear, plaintiff's testimony regarding the nature of his convictions (and thus plaintiff's counsel's recitation of them) are not consistent with his official state and federal rap sheets. Plaintiff has twenty-two arrests and nine convictions for a variety of crimes including weapons possession, murder, drug possession and assault, which span from the 1950s to 2009. Defendants have no intention of offering evidence of plaintiff's various drug, weapons, and assault convictions into evidence – unless plaintiff opens the door to these convictions. Neither do defendants intend to offer evidence of plaintiff's attempted murder conviction upon two police officers, which plaintiff claims was vacated - again, unless plaintiff opens the door. The two of plaintiff's convictions which are at issue are: (i) his federal conviction for money laundering in 1977, for which he served approximately nine years, and (ii)

3

his conviction for manslaughter in 1988, for which he was sentenced ten to twenty years and served twelve years[2].

Money Laundering:

Plaintiff testified at his 50-h hearing and at his deposition that he has a federal conviction for money laundering in 1977, for which he served approximately nine years in federal prison.[3] Money laundering is a crime of dishonesty. United States v. Napout, 332 F. Supp. 3d 533, 545 (E.D.N.Y. 2018) United States v. Yang, 887 F. Supp. 95, 96 (S.D.N.Y. 1995). Crimes of dishonesty are automatically admissible for impeachment purposes under Rule 609(a)(2), which provides that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." Fed. R. Evid. 609(a)(2). Crimes of dishonesty are automatically admissible as they bear on a witness's propensity to testify truthfully. United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005). Credibility is particularly important in this case because defendants will not be able to cross-examine the plaintiff, as he will not be testifying.

Plaintiff also has a conviction for manslaughter from 1988, for which he served twelve years in prison. Defendants concede that normally a conviction which is so old, and does not involve a crime of dishonesty, would not be admissible. However, here there is two-fold basis for its admission.

---

[2] He was sentenced in 1988, incarcerated until 2000, and on parole until 2007.

[3] Plaintiff's federal rap sheet, shows the top charge as "conspiracy". It shows the arrest date as March 15, 1977, and the sentence as fifteen years with lifetime parole. It appears to be plaintiff's only federal conviction (other than for drug offenses while already incarcerated for which no additional time was added), so we presume this "conspiracy" conviction is the money laundering conviction about which plaintiff testified.

First, plaintiff's counsel designated deposition testimony from plaintiff's deposition wherein he discussed earning both an undergraduate and master's degree while incarcerated in or about 1994. See Plaintiff's designation of deposition testimony at 14:12-15:2. In designating this testimony, plaintiff has opened the door to the circumstances of his incarceration – namely that he was incarcerated for manslaughter and served twelve years. Cimino v. Glaze, 490 F. App'x 401, 402 (2d Cir. 2013) ("[T]he district court did not abuse its discretion by allowing into evidence Cimino's past criminal convictions and current incarceration, as it found that Cimino had opened the door to discussion of this information when he testified to those facts on direct examination.").

Second, plaintiff's counsel has designated various testimony the purpose of which appears to be to paint plaintiff as a "good guy", invested in the community. For example, plaintiff's counsel have designated testimony that plaintiff (i) does volunteer work (20:22-23), (ii) registers voters and tries to encourage community involvement in the political process (21:6-8), (iii) was the director of two campaigns seeking to restore the vote to felons (21:20-22), (iv) did work for a coalition of civil rights organizations including the NAACP (21:23-25), (v) was recognized internationally for his work combatting stop and frisk (22:20-25), and (vi) that he has a relationship with State Senator Bill Perkins (76:18-21). Defendants objected to all this testimony as character bolstering, and not relevant. Upon information and belief, plaintiff's six witnesses, Five Mualimm-Ak, Terrence Slater, Nuratu Otulana, Joshua Kristal, Rachel Levine and Channing Tyler, may also seek to provide character testimony on behalf of plaintiff. To the extent that the Court admits the above-referenced deposition designations, or allows plaintiff's witnesses to provide character testimony, defendants should then be permitted to elicit the fact of plaintiff's conviction for manslaughter to rebut the testimony that plaintiff is a good guy,

invested in the community (and depending upon what these six witnesses say, potentially introduce evidence of plaintiff's other convictions). Ortiz v. Walsh, 2004 U.S. Dist. LEXIS 624, at *25 (S.D.N.Y. Jan. 20, 2004) ("When a witness opens the door by testifying to the defendant's good character, proof of prior convictions becomes admissible.").

Plaintiff's Rap Sheet:

Plaintiff also seeks to preclude admission of his rap sheet. Defendants do not intend to introduce plaintiff's rap sheet into evidence as an exhibit – unless plaintiff opens the door. If the Court rules that plaintiff's convictions for money laundering and manslaughter are admissible for the reasons set forth above, defendants can simply read into the record the relevant portions of plaintiff's deposition testimony where he spoke about those convictions. Alternatively, the parties can agree upon a stipulation regarding the convictions to be read into the record. In those events, there is no reason to put the rap sheet into evidence.

**Point VI -   Defendants Do Not Intend To Offer Plaintiff's Mug Shot Unless Plaintiff Opens The Door.**

Plaintiff's sixth motion *in limine* to preclude defendants from introducing plaintiff's mug shot into evidence is baseless for several reasons. First, defendants did not list plaintiff's mugshot as an exhibit on the JPTO. Defendants have no intention of offering the mug shot photo of plaintiff into evidence – unless plaintiff opens the door.

Second, the cases to which plaintiff cites (for the proposition that introduction of his mug shot as an exhibit would be unduly prejudicial) are criminal cases, the logic of which clearly does not extend here – that plaintiff may be more likely to be convicted if already viewed as a criminal. Further, the fact that plaintiff was arrested is no secret; the videos show plaintiff being handcuffed, and plaintiff's counsel have designated testimony in which plaintiff discusses being

arrested, taken to the precinct, and then central booking. There is simply no prejudice from the mug shot in this civil case.

Third, plaintiff listed on the JPTO as exhibit 19 a photo of plaintiff, smiling with friends, taken on an unknown date, seated on his walker. Presumably plaintiff's counsel's purpose in offering exhibit 19 is to give the jury a positive visual image of plaintiff since he will not be testifying at trial. But this photo is not relevant and is clearly prejudicial as it shows plaintiff now, looking considerably more frail than he was on the date of incident, and in fact, shows him seated on a walker. If any photo of plaintiff were relevant, it is the only one taken on the date of the incident – his mug shot.

Notwithstanding the foregoing, defendants have no intention of offering the mug shot into evidence unless plaintiff opens the door.

**Point VII -     Defendants Do Not Intend Submit Evidence of Plaintiff's Prior Drug Use, Unless Plaintiff Opens The Door.**

Defendants have no intention of offering any testimony or evidence of plaintiff's prior drug use unless plaintiff opens the door.

**Point VIII -    The Fact That Plaintiff Had An Outstanding Warrant On The Date Of Incident Should Be Admissible.**

Plaintiff seeks to preclude defendants from offering into evidence any testimony concerning the fact that plaintiff had an open bench warrant on the date of the incident. This evidence should be admissible because it is relevant to plaintiff's force claim, and because it is relevant to rebut the bolstering testimony plaintiff's counsel has designated to make plaintiff seem like a "good guy".

After plaintiff refused to move back, he was asked to provide identification. Plaintiff repeatedly refused. Plaintiff has designated deposition testimony to explain his refusal: "Q: Did

you hear Sergeant Abdallah tell you that if you didn't provide identification that you would be arrested? A: No, I didn't hear him say that. Q: Had you hear him say that would you have provided identification? A: If he would have explained to me why he was arresting me and why he wanted my identification then I would have complied." Pl. Tr. at 47:4-13. Defendants should be able to explore why plaintiff refused to provide his identification, and ultimately resisted arrest. The fact that he had an open bench warrant certainly provides an explanation other than the excuse plaintiff offered: that he did not hear the request that was being loudly and repeatedly conveyed. To the extent, plaintiff's counsel have raised a best evidence rule objection to the designated deposition testimony, defendants can solve that problem by simply introducing the actual warrant, which was produced during discovery.

In addition, and as noted above, plaintiff has designated testimony whose only possible purpose can be to paint plaintiff as a good guy, active in his community, with a good reputation. Defendants have objected to these designations, but if the Court ultimately admits them, or allows plaintiff's six witnesses to provide similar testimony, defendants should be allowed to rebut that by showing there was a warrant out for plaintiff's arrest at the time of the incident.

**Point IX -** <u>**Plaintiff's Use of Aliases Is Admissible.**</u>

Plaintiff seeks to preclude defendants from introducing evidence that plaintiff went by the alias Joseph Freeman at an earlier stage of his life. In fact, according to his rap sheet, plaintiff went by several aliases. "The use of an alias goes to credibility and truthfulness, and accordingly, defendants' request to introduce evidence of plaintiff's use of an alias is granted." <u>Hernandez v. Kelly</u>, No. 09 CV 1576 (TLM)(LB), 2011 U.S. Dist. LEXIS 57114, at *12 (E.D.N.Y. May 27, 2011); <u>Fletcher v. City of N.Y.</u>, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (questioning about aliases allowed under Rule 608(b)). Notwithstanding, defendants have no intention of eliciting

evidence about plaintiff's alias's in our case-in-chief unless plaintiff opens the door – in which case, defendants would seek to introduce the testimony at page 10 lines 17-20 where plaintiff testified that he changed his name in order to try to get a job.

**Point X -    Defendants Agree All Testimony Regarding Plaintiff's Employment And Financial Status Is Wholly Irrelevant.**

Plaintiff seeks to preclude defendants from offering evidence of plaintiff's "financial status, job history, receipt of public assistance, and any financial arrangements within or concerning his household" because such evidence has "no bearing on the central factual dispute" "nor does it tend to make any of the parties' claims or defenses more or less likely to be true". According to plaintiff, "these areas of inquiry are of no probative value and are immaterial." Pl. MIL at 17-18. Defendants agree.

Yet, plaintiff's counsel's position is a curious one, considering that they have designated testimony from plaintiff's deposition concerning his volunteer work (20:16-22:25), his paid work for a Chinese organization to register voters in Harlem (23:17-24:6), his work with the Quakers regarding educating school children to engage with the political process 24:13-26:25.), his work to combat stop and frisk (20:16-22:25), and his role as a lead plaintiff in Hayden v. Pataki (21:11-14). Meanwhile, defendants have not designated any testimony regarding plaintiff's employment history, income, financial status, or receipt of public assistance. Essentially, plaintiff's counsel have made a motion *in limine* to preclude the objectionable testimony that they seek to offer on the ground of palpable irrelevance. Defendants are in full agreement this testimony should indeed be precluded.

**Point XI.    Plaintiff's Testimony Regarding Officer Kotowski Is Admissible.**

Plaintiff seeks to sanitize his testimony. But that is not how cross-examination works at a trial, and the fact that the parties are constrained to using plaintiff's deposition testimony should

not compel a different result. Plaintiff sues Officer Kotowski for excessive force, but has never specifically explained what it is Officer Kotowski is alleged to have done. Indeed, after testifying that Sergeant Abdalla allegedly struck him with a baton, plaintiff was asked the following question, to which he gave the following answer: "Q: Were any other officers hitting you or kicking you in any way? A: No." (59:21-23). The closest plaintiff has come to alleging that any other officer used excessive force against him was his testimony that there were "a couple of people that were trying to physically bring me under their control". (41:22-23). The fact that plaintiff has made excessive force allegations against Officer Kotowski and had no idea who Officer Kotowski was (not just by name but by any identifying characteristic) is relevant to credibility. Plaintiff testified, "Q: When you were having this interaction with Sergeant Abdalla, do you know where Officer Kotowski was standing? A: No." (49:10-12). Accordingly, plaintiff's testimony about his knowledge of Officer Kotowski should not be precluded.

**Point XII -   Defendants Do Not Intend To Offer Evidence Of Plaintiff's Prior Broken Jaw Unless Plaintiff Opens The Door.**

Defendants have no intention of offering testimony about plaintiff's prior broken jaw unless plaintiff opens the door.

**Point XIII -   Defendants Have No Intention of Offering Testimony About Awards or Commendations of Its Officers Unless Plaintiff Opens The Door.**

Plaintiff seeks to preclude defendants and any other police officer testifying from offering testimony regarding awards or commendations. Defendants have no intention of doing so unless plaintiff opens the door. Defendants should, however, be entitled to elicit each officer's rank and what that role involves.

**Point XIV -** <u>**Defendants Do Not Intend To Reference The Individual Defendants' Financial Circumstances Or Responsibility To Pay Any Judgment.**</u>

Plaintiff seeks to preclude defendants from arguing or offering evidence at trial that the individual defendants will be responsible for any judgments against them, or arguing or offering evidence concerning the individual defendants' financial circumstances. See Pl. MIL, Point XIV, pp. 20-21. Defendants have no intention of mentioning anything about the individual defendants' financial circumstances or their responsibility to pay any judgments that may be entered against them in this case unless plaintiff opens the door.

Defendants are in agreement with plaintiff that evidence or arguments concerning the individual defendants' entitlement to indemnity, financial circumstances or ability to pay any judgments is not relevant to the claims herein and are prejudicial, and in this regard, defendants also moved to preclude plaintiff from arguing or presenting any evidence to the jury regarding the City's potential indemnification of the individual defendants. See Defs. MIL, Point IX, pp. 14-15.

**Point XV -** <u>**Defendants Take No Position On Whether The Court Should Permit Plaintiff's Counsel To Call Defendants in Plaintiff's Case-In-Chief or Use Leading Questions. Plaintiff Should Not Be Permitted To Lead Non-Party Witnesses.**</u>

Plaintiff's counsel seeks permission to call defendants in their case-in-chief and to use leading questions when doing so. Defendants take no position on this request and defer to the Court's preferences as to how the trial ought to be conducted.

Plaintiff's counsel also seeks permission to call non-party NYPD witnesses in plaintiff's case-in-chief and to use leading questions when doing so. Defendants object. As an initial matter, plaintiff has not listed any non-party NYPD witnesses on the JPTO. Defendants listed one,

Auxiliary Sergeant Irvin McSweeney. Plaintiff should not be permitted to use leading question with respect to Aux. Sgt. McSweeney should they call him as a witness on plaintiff's direct case. Plaintiff's counsel argues that they should be permitted to cross-examine Aux. Sgt. McSweeny on his direct examination because he is presumed to be "hostile or biased" or "a witness identified with an adverse party." Aux. Sgt. McSweeny is none of those things. First, he is not a member of the NYPD; he was an auxiliary sergeant – that is, a civic minded volunteer. Second, plaintiff has never established that Aux. Sgt. McSweeny is either hostile or biased. Plaintiff never deposed him. Aux. Sgt. McSweeny is simply an eye-witness in the same manner that plaintiff proffers his own six civilian witnesses.

**Point XVI -** **Witnesses Should Not Be Permitted To Testify Via Video.**

Plaintiff's counsel proposes that all parties should be entitled to call witnesses via video conference provided the witness is not a "core witness". Although plaintiff has declined to define who the "core witnesses" are, presumably as plaintiff is not testifying, plaintiff means "the defendants". Essentially plaintiff seeks permission for his own witnesses to testify remotely via video, while seeking to compel his adversaries to testify in person. No witnesses should testify remotely. This is a jury trial. The jury should have the right to see the demeanor and mannerisms of each witness because those observations are part of credibility analysis. Also, when witnesses testify remotely, there is always a question about what documents they might have in front of them and who else might be in the room suggesting testimony. Simply put, every one else is required to attend in person – the defendants, the parties' attorneys, court personnel, Your Honor, and the jurors – there is no reason for plaintiff's witnesses to be treated any differently.

## CONCLUSION

Accordingly, plaintiff's motions *in limine* should be decided as set forth above.

Dated: New York, New York
November 9, 2020

> James E. Johnson
> Corporation Counsel of the
> City of New York
> *Attorney for Defendants*
> 100 Church Street
> New York, New York 10007
> (212) 356-3549
>
> By:     */s/ Elissa Fudim*
> Elissa Fudim
> *Senior Counsel*
> Special Federal Litigation Division